# EXHIBIT A

Case 3:16-cv-04454-AET-DEA   Document 1   Filed 07/22/16   Page 1 of 8 PageID: 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH P. GREENLEY JR.,
            NO.:
      Plaintiff,

  v.

TOMS RIVER KIA
            JURY TRIAL DEMANDED
      Defendants.

### COMPLAINT

A.  **Jurisdiction and Venue**

1. Jurisdiction arises under 15 U.S.C. § 1332, together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

B.  **Parties**

3. Plaintiff, JOSEPH P. GREENLEY JR., is an adult individual presently residing at 3539 Brookview Rd., Philadelphia PA 19154.

4. Defendant, TOMS RIVER KIA ("TRK") is a corporation licensed to do business in the State of New Jersey, regularly conducting business at 1070 Rte. 37W, Toms River, NJ 08755. Defendant TRK regularly buys, sells, and services motor vehicles.

C.  **Factual Allegations**

5. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

6. On or about May 20, 2016, Mr. Greenley, visited the TRK dealership by the name of to

Case 3:16-cv-04454-AET-DEA   Document 1   Filed 07/22/16   Page 2 of 8 PageID: 2

view a vehicle advertised on the internet, namely a 2013 Kia Optima, VIN # 5XXGR4A66DG108268 ("the Vehicle").

7. Prior to Plaintiff's aforesaid visit to the TRK dealership, TRK advertised the Vehicle online with a cash sales price of $16,356.00.

8. Prior to the execution of any contracts, TRK's agents made the following representations expressly and/or impliedly about the subject vehicle:

   a) TRK would transfer lawfully Title and registration and/or submit the appropriate paperwork to the Commonwealth;
   b) The sale was conducted and the paperwork was completed lawfully.
   c) Plaintiff was being charged lawfully for taxes;
   d) Plaintiff was being charged lawfully amounts paid to public officials for title, registration and lien fees;
   e) The vehicle had not had any prior collision related accident(s)s or damage.

9. Prior to the execution of any agreements, TRK concealed the following facts from the Plaintiff about the subject vehicle:

   a) TRK would not transfer lawfully Title and registration and/or submit the appropriate paperwork to the Commonwealth because it lacked title to the vehicle when sold;
   b) The sale was not conducted and the paperwork was not completed lawfully.
   c) Plaintiff was not being charged lawfully for taxes;
   d) Plaintiff was not being charged lawful amounts paid to public officials for title, registration and lien fees;
   e) The vehicle had prior collision related accident(s)s or damage.

10. By a Buyer's Order and Retail Installment Sales Contract each dated May 20, 2016, the plaintiff and TRK ostensibly and apparently agreed to the terms for the financed purchase/sale of the vehicle on the following relevant terms:

   a) Cash sales price of $20,399;


      b) Trade-in value of $12,000

      c) Sales tax of $1,600.

11. The subject vehicle was sold to plaintiff without TRK having secured title to the vehicle.

12. TRK assigned the RISC to Santander Bank.

13. The amount of sales tax was calculated based upon the total sales price of the vehicle.

14. Temporary tags for the vehicle expired on June 6, 2016.

15. Defendant did not secured title to the vehicle until on or about July 8, 2016 rendering the vehicle unusable by plaintiff in the interim.

16. Further investigation thereafter at a mechanic's shop revealed that the vehicle had accident related damage that would have or should have been evident to anyone in the automotive trade during a pre-sale inspection of the vehicle including but not limited to replacement of the Vehicle's bumper.

### TRK's Agreement with assignee Santander

17. Upon information and belief, prior to the transaction at issue, Santander and TRK had a Master Dealer agreement whereby TRK as a dealer customer of Santander represented and warranted that it possessed "indefeasible title" "immediately prior to the purchase" by a buyer to any vehicle for which TRK sought to assign the sale contract to Santander (referred to hereinafter as "the Agreement").

18. Accordingly, as part of the subject disputed purchase, TRK promised to and was legally bound to transfer Title ownership to plaintiff under the Agreement and submit records to the Commonwealth of Pennsylvania to transfer permanent registration to plaintiff.

19. TRK was a merchant in the regular ordinary business of selling vehicles to consumers,

such as the subject vehicle.

20. Plaintiff was a good-faith purchaser for value in the ordinary course of business.

21. Plaintiff has not been able to register and therefore use the vehicle consistently since date of purchase.

22. TRK represented that it was signing the Title Certificate of the car over to plaintiff by representing that it would process the Title with the Department of Motor Vehicles, by acting as an agent of the Department of Motor Vehicles to provide him with a temporary tag and a temporary registration, and by using various contract documents that asserted that he was the owner of the car and was giving up a security interest in the car.

23. Although TRK gave plaintiff possession of the car on the date of sale, because TRK did provide the vehicle as represented and promised, did not forward the amounts to the Commonwealth of Pennsylvania, and/or did not transfer properly Title ownership and registration, did not recognize plaintiff as the owner, it did not give him actual use of that credit that day.

## COUNT I - FRAUD

24. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

25. Prior to the execution of any agreements, TRK concealed the following facts from the Plaintiff about the Vehicle and the sales transaction for the Vehicle:

   a) TRK did not conduct the transaction or complete paperwork lawfully insofar as it calculated the sales tax amount based on the total cash price of the Vehicle rather than the price of the vehicle less the trade-in value thereby resulting in charging double the amount of sales tax;

   b) TRK charged an unlawful documentary fee to prepare unlawful sales paperwork;

4

    c) TRK did not possess and was unable to transfer lawful Title and/or registration and/or submit the appropriate paperwork to the Commonwealth of Pennsylvania in connection with its promises in the sales transaction such that plaintiff lost the use of the vehicle for several weeks.

    d) TRK advertised the Vehicle online with the false cash sales price of $16,356.00 in order to induce plaintiff to come to its dealership and then switch the price for a cash sales price amount roughly $4,000 higher.

26. In addition to foregoing acts and omissions of Defendant, Defendant's agents, including but not limited to those identified on the attached records, intentionally, recklessly and/or negligently, expressly or impliedly represented to the plaintiff before the purchase that the Vehicle had not been involved in any prior accidents and that it was free of defects or conditions hampering its use, value, or safety.

27. At all times relevant, and in response to plaintiff's questions about the Vehicle, the defendants' agents, including but not limited to those identified on the attached records, concealed from the plaintiff that the vehicle was in a prior accident, one or more severe enough to cause extensive damage to the vehicle.

28. The defendant's representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

29. The defendant's representations and/omissions outlined in previous paragraph were false, were known or should have been known to defendants to be false when made, were material in nature, and

were made with the intent to deceive, defraud and/or induce the plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

30.  Defendant knew or should have known that the Vehicle was in a defective condition based on:

    a) their inspection of and the condition of the vehicle;

    b) its prior use history

    c) the vehicle history report;

    d) its prior repair history;

    e) its prior ownership history and their reputation in the industry;

    f) their experience in the trade;

    g) their familiarity with reports in popular and industry related media;

    h) the manufacturer's warranty and repair history and/or database.

31.  The misrepresentations and omissions identified in the immediately preceding paragraphs were known or should have been known to TRK to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

32.  TRK knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

33.  The Plaintiff relied on the TRK's misrepresentations and was induced to sign the RISC and other documents related to which he apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement due to the diminution in or elimination of the Vehicle's value at time of its sale by Defendant due to its intentional, reckless, wanton, and negligent failure to inform plaintiff of the vehicle's prior use,

prior repair history, damage history, and accident history.

34. As a result of the aforementioned conduct, Plaintiff suffered the damages outlined above and below.

35. TRK's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary and/or punitive damages.

### COUNT II - New Jersey Consumer Fraud Act (CFA)

36. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

37. Defendant, by its actions described heretofore, engaged in unconscionable commercial practices, deception, fraud, false pretense, false promises, misrepresentations, and/or the knowing, concealment, or omission of material facts in violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. including, but not limited to Defendants failing to disclose lack of lawful title to the Vehicle and unlawfully inflated sales charges.

38. The foregoing acts by Defendants in violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 et seq., as a result of which Plaintiff suffered ascertainable loss in the amount of the purchase price of the subject vehicle.

WHEREFORE, Plaintiffs demand judgment against defendants for violations of the Unfair Trade Practices and Consumer Protection Law for:

(a) Actual and compensatory damages in the amount of the sale price of the vehicle;

(b) Treble damages;

(c) Punitive damages;

(d) Attorney fees and costs; and

(e) Such other and further relief as the Court shall deem just and proper.

### PRAYER FOR DAMAGES

Plaintiff demands judgment against defendant as follows:

A. For fraud, actual and punitive damages;

B. For violations of the NJ CFA, actual and compensatory damages, treble damages, attorney fees and costs; and such other and;

C. Further relief as the Court shall deem just and proper.

WEISBERG LAW

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
Attorney for Plaintiff